IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Capitol Specialty Insurance      :
Corporation,
                                 :     Case No. 2:10-cv-432
         Plaintiff,
                                 :     JUDGE ALGENON L. MARBLEY
    v.                                 Magistrate Judge Kemp
                                 :
Splash Dogs, LLC, et al.,
                                 :
         Defendants.


OPINION AND ORDER

     This declaratory judgment action is before the Court for a
ruling on defendant Randy Woods' motion to dismiss for lack of
personal jurisdiction and improper venue, or in the alternative,
to transfer venue.  (Doc. #24).  Mr. Woods, who is not an Ohio
resident, argues that this case cannot or should not proceed in
an Ohio district court.  The motion has been fully briefed.  For
the reasons stated below, the Court concludes that the Southern
District of Ohio is a proper forum in which to resolve the
underlying dispute between Mr. Woods and his insurer, and the
motion to dismiss or transfer will be denied.

I. Background

     On April 16, 2008, a company known as J4 Promotions, Inc.,
which does business as DockDogs, sued Splash Dogs, LLC, and five
individuals, including Randy Woods, accusing them of copyright
infringement, defamation, engaging in deceptive trade practices,
and tortious interference with business relationships.  All of
its claims relate to the business in which both DockDogs and
Splash Dogs compete, which is known as "canine dock jumping" (and
which apparently involves sporting competitions in which dogs
jump from docks into pools of water, with the object (at least
from the human competitors' or spectators' vantage point) of

making the longest jump).  That case was filed in the United States District Court for the Northern District of Ohio, where DockDogs has its principal place of business.  All of the defendants in that case are California residents except for Mr. Woods, who resides in Indiana.

The defendants did not agree that the case was properly filed in the Northern District, and they jointly filed a motion to dismiss or transfer venue.  Judge Kathleen O'Malley, to whom the case had been assigned, agreed in part.  She found that most of the defendants (except for Thanh K. Nguyen) had sufficient contacts with the State of Ohio to justify the exercise of personal jurisdiction over them under Ohio's long-arm statute, but that the proper district in which the "anchor" claims of the complaint (the claims for copyright infringement, unfair competition, and violation of the Ohio Deceptive Trade Practices Act) should have been brought was the Southern District of Ohio. Consequently, in an order filed on February 13, 2009, she dismissed the claims against Mr. Nguyen and transferred the balance of the case to the Southern District.  See J4 Promotions, Inc. v. Splash Dogs, LLC, 2009 WL 385611 (N.D. Ohio February 13, 2009).  The case was received in this district on February 24, 2009, and assigned Case No. 2:09-cv-136.

During some or all of the time when they allegedly violated DockDogs' legal interests, Splash Dogs and Mr. Woods had insurance through Capitol Specialty Insurance Corporation.  They asked Capitol to defend them in the J4 Promotions Case (which the Court will also refer to as the "DockDogs case") and to indemnify them should a judgment be entered against them in that case. Capitol does not believe that its policy covers the claims made in the DockDogs case.  It has been defending Splash Dogs and Mr. Woods, but in order to get some legal clarification of its obligations to those parties, Capitol filed this declaratory

-2-

judgment action.  The gist of its argument concerning coverage
is that the claims which DockDogs has made against Splash Dogs
and Mr. Woods are not claims for personal or bodily injury, which
are covered occurrences under the policy, or are claims which are
specifically excluded from coverage.

## II. Mr. Woods' Motion

Before describing in detail the arguments Mr. Woods makes in
his motion to dismiss or transfer, it is helpful to explain why
Judge O'Malley concluded that Mr. Woods could properly be sued by
DockDogs in Ohio.  As in most cases, that decision focused on
what Mr. Woods did in Ohio and whether DockDogs' claims related
to the things he did here.

Judge O'Malley found, first, that Mr. Woods had transacted
business in Ohio as that phrase is defined in Ohio's long-arm
statute.  Specifically, the evidence presented to her showed that
Splash Dogs, acting through Mr. Woods and Mr. Reed, held a
jumping competition in Columbus in March of 2007, and that both
of them had previously done work for DockDogs and had been paid
for that work from an Ohio bank account.  In connection with the
March, 2007 competition, Ohio residents were targeted as
spectators and permitted to register for the event through the
Splash Dogs website.  Space was rented in Columbus and
participants were invited to travel to Columbus to compete.  All
of these activities had a commercial impact in the State of Ohio,
as did Mr. Woods' prior work for DockDogs.

The next question Judge O'Malley addressed was whether any
of DockDogs' claims arose out of Mr. Woods' Ohio-based business
activities.  She noted a conflict between the parties as to
whether DockDogs had drafted its rules and regulations, which the
defendants allegedly infringed, before the March, 2007 event,
but, as the case law instructs, she drew an inference favoring
DockDogs as the non-moving party.  Given that inference, she

found that some of the copyright infringement claims arose from Mr. Wood's Ohio business activities.  She also concluded that even if that were not so, to the extent that he or the other defendants used DockDogs' copyrighted materials elsewhere, that use had an effect on DockDogs within Ohio, and that this was enough to permit personal jurisdiction to be exercised on that claim.  She used a similar rationale to find that any defamatory statements made by the defendants had an effect on DockDogs in Ohio, especially because some of them were allegedly posted on an Ohio-based website.  Because the deceptive trade practices claim arose from the same allegedly defamatory statements, she found the defendants subject to personal jurisdiction in Ohio on that claim as well, and also found that to the extent these or other comments may have dissuaded DockDogs' sponsors from continuing to do business with it, the injury to DockDogs from that type of tortious interference with business relations occurred in Ohio.

After conducting the required analysis under the long-arm statute, Judge O'Malley turned to the due process question, and held that the exercise of personal jurisdiction over Mr. Woods was reasonable as to some of DockDogs' claims because he personally availed himself of the right to do business in Ohio and some of the claims in the complaint arose from his transaction of business in Ohio or from the effects of conduct which occurred outside of Ohio but which was intended to, and did, affect DockDogs in Ohio.  She did find that a handful of claims (specifically the deceptive trade practices and defamation claims) did not have a sufficient connection to Ohio to subject Mr. Woods to jurisdiction here, but she concluded that these claims were properly brought in Ohio under the doctrine of "pendent personal jurisdiction" (which this Court will discuss more fully below) because they were factually related to claims over which personal jurisdiction could properly be exercised.  As

-4-

noted above, because many of these claims related, directly or indirectly, to the March, 2007 competition held in Columbus, she transferred the case to this district.

Mr. Woods does not, and cannot, argue in the context of the motion he filed in this case that the Court has no jurisdiction over him with respect to DockDogs' claims. However, Mr. Woods contends that this Court cannot exercise personal jurisdiction over him in this declaratory judgment action. In drawing a distinction between the two cases, he relies heavily on two different arguments. First, he asserts that Capitol's declaratory judgment claim does not arise out of any business which he may have transacted in Ohio, and particularly does not arise out of either his prior employment relationship with DockDogs or the March, 2007 competition held in Columbus, which are the two ways in which Judge O'Malley found that he transacted business in Ohio for purposes of applying Ohio's long-arm statute. Second, he notes that, in ruling on two motions filed by Capitol - one to intervene in the DockDogs case, and one to consolidate this action with that one - this Court held that the two cases are not related enough to have them proceed together. This proves, according to Mr. Woods, that Capitol's claims are not predicated on the same series of events that underlie the DockDogs case. Because Mr. Woods has had no other contacts with Ohio - and none in relation to the issuance of the insurance policy in question - he asserts that the Court cannot exercise personal jurisdiction over him as to the claims for declaratory judgment. Failing that, he argues that venue is not proper here or that the convenience of the parties and the witnesses favors a change of venue.

### III. <u>Law and Analysis</u>

A. <u>Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2)</u>

The Court will address the issue of personal jurisdiction first. The general principles governing a ruling on a motion to dismiss for lack of personal jurisdiction are well-known. First, the plaintiff bears the burden of proving personal jurisdiction exists. CompuServe Inc. v. Patterson, 89 F.3d 1257, 1262-63 (6th Cir. 1996). In the face of a supported motion to dismiss, the plaintiff may not rest on the pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing Weller v. Cromwell Oil Co., 504 F.2d 927, 930 (6th Cir. 1974)). When the Court rules on a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing on the issue of personal jurisdiction, however, the plaintiff "'need only make a prima facie showing of jurisdiction.'" Bird v. Parsons, 289 F.3d 865, 871 (6th Cir.2002) (quoting Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002)) (internal citation omitted). The plaintiff can make this prima facie showing by " 'establishing with reasonable particularity sufficient contacts between [the Defendants] and the forum state to support jurisdiction.'" Neogen Corp., 282 F.3d at 887 (quoting Provident Nat'l Bank v. California Savings Loan Ass'n, 819 F.2d 434, 437 (3d Cir.1987)).

In deciding a Rule 12(b)(2) motion to dismiss, the Court is to construe the facts in the light most favorable to the non-moving party. Significantly, the Court is not to weigh any assertions of the party seeking dismissal which contradict those offered by the plaintiff. CompuServe, 89 F.3d at 1262 (citing Theunissen, 935 F.2d at 1459). That way, a defendant cannot defeat personal jurisdiction simply by filing an affidavit that denies all jurisdictional facts. Compuserve, 89 F.3d at 1262 (citing Theunissen, 935 F.2d at 1459).

It makes a difference in the jurisdictional analysis whether

the underlying claims arise under federal law or state law.  In the former situation, the Court need only conduct a due process analysis.  However, when the Court's jurisdiction is founded on diversity of citizenship, it can exercise personal jurisdiction over a defendant only if personal jurisdiction is "(1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG, 196 Fed. Appx 366, 369 (6th Cir. 2006) (quoting Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 888 (6th Cir. 2002)).  The Sixth Circuit has "recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits," and has "consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend 'traditional notions of fair play and substantial justice'" when analyzing the propriety of personal jurisdiction under Ohio's long-arm statute.  Bird, 289 F.3d at 871 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).  Consequently, the Court will begin its analysis with a discussion of whether Capitol has made a prima facie showing that jurisdiction over Mr. Woods is proper under Ohio's long-arm statute.

### 1. Ohio's Long-arm Statute

The focus of Capitol's argument is that the exercise of personal jurisdiction over Mr. Woods is proper in this declaratory judgment action because it is proper in the DockDogs' case.  The issue, however, may not be quite that simple to resolve.  The causes of action in the two cases are not identical, and, with respect to at least some theoretical bases for finding jurisdiction in one case just because it exists in another, courts have expressed some doubt about whether the relationship between the two is that direct.  See, e.g., American

-7-

Home Assur. Co. v. Sport Maska, Inc., 808 F.Supp. 67, 74 (D.
Mass. 1992) ("I am skeptical of the assumption ... that if the
defendants are subject to personal jurisdiction in ... (the tort
case) they must also be subject to personal jurisdiction ... in
[the] declaratory judgment action ..."). Nevertheless, for the
reasons that follow, the Court finds that in this particular
situation, such jurisdiction exists.

This Court begins its analysis (as Judge O'Malley did in the
DockDogs case) by examining the Ohio long-arm statute, R.C.
2307.382. It says, in pertinent part, that:

> (A) A court may exercise personal jurisdiction
> over a person who acts directly or by an agent,
> as to a cause of action arising from the
> person's:
>
> (1) Transacting any business in this state;
>
> (2) Contracting to supply services or goods in
> this state;
>                       * * *
>
> (6) Causing tortious injury in this state to
> any person by an act outside this state
> committed with the purpose of injuring
> persons, when he might reasonably have
> expected that some person would be injured
> thereby in this state.

As far as subsection (1) is concerned, Mr. Woods acknowledges his
work for Splash Dogs in connection with the event held in
Columbus, Ohio, for three days in March, 2007 and the fact that
he previously did work for DockDogs. Consequently, Capitol has
made a prima facie showing that Mr. Woods has transacted business
in Ohio. That is not the key question, however, concerning
whether the Court may exercise jurisdiction over Mr. Woods under
subsection (1). Rather, the question is whether Capitol's claims
for declaratory relief "arise from" the business which Mr. Woods
transacted in Ohio. Essentially the same issue is presented by
subsection (6); Judge O'Malley found that Mr. Woods engaged in

-8-

tortious activity sufficient to satisfy that statutory provision, and the question becomes whether the dispute about insurance coverage for such tortious acts "arises from" the acts themselves.

There is no question that, in order for jurisdiction to be based on Ohio's long-arm statute, the cause of action must arise from acts enumerated in the statute.  R.C. §2307.382(C).  This provision has been interpreted to mean that, under Ohio's long-arm statute, "there is no general jurisdiction over non-resident defendants; the jurisdiction must be specific and based on events giving rise to the cause of action."  Black v. Usher Transport, 2010 WL 2465379, *2 (S.D. Ohio June 11, 2010) (Frost, J.). Further, "[b]ecause the Ohio long arm statute does not reach the limits of due process, personal jurisdiction under the long arm statute must be specific rather than general."  Id.; see also U.S. Diamond & Gold v. Julius Klein Diamonds LLC, 2007 WL 1026421 (S.D. Ohio March 29, 2007) (Rose, J.).  The issue, then, is what is meant by a cause of action "arising from" the defendant's conduct.

One way in which to address this question is to ask whether the "arising from" test in the Ohio statute equates to "but for" causation, which is clearly present here (that is, but for Mr. Woods' having taken part in the March, 2007 competition or engaged in tortious conduct causing an effect in Ohio, there would be no insurance coverage question relating to DockDogs' claims which are founded on those activities), or whether the statute requires something more.  The answer to that question is not self-evident.  Cf. Employers Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153 (10th Cir. 2010), noting that there are at least three possible tests to apply to the requirement that a cause of action "arise from" a defendant's activities within the

forum state - but-for causation, proximate cause, and a middle ground requiring a "substantial connection" between the two.

There is little, if any, case law in Ohio on this issue. The case law from other jurisdictions is not uniform in answering that question in the context of a declaratory judgment action involving insurance coverage.  Some courts have held that any time an insured acts within a particular forum in such a way as to justify the exercise of personal jurisdiction over the insured, and then demands a defense from its insurer, a declaratory judgment action dealing with the duty to supply that defense "arises directly out of" the conduct which triggered the underlying suit.  See, e.g., Massachusetts Bay Ins. Co. v. Portland Water District, 2000 WL 1499493, *4 (D.N.H. May 10, 2000), citing, inter alia, United Services Automobile Ass'n v. Cregor, 617 F.Supp. 1053, 1055-56 (N.D. Ill. 1985).  The Cregor court reasoned that a declaratory judgment action concerning insurance coverage for actions which constituted the transaction of business in the forum state "lie[s] in the wake of [that] activity" and therefore arise from the insured's transacting business in the forum state.  The Bartile Roofs Court reached the same result, holding that under either a proximate cause or but-for cause test, a declaratory judgment action involving insurance coverage for a roofing project performed by the insured in the forum state arose out of the insured's allegedly negligent work; "[t]he proximate-cause approach is satisfied because [the insured's] negligent work is relevant to the merits of the declaratory judgment action [and] [t]he but-for causation approach is satisfied because the insured's allegedly negligent work was an event in the causal chain leading to the request for a declaratory judgment."  Id. at 1161.

Portland Water District extended this line of reasoning to a declaratory judgment action dealing with tortious activity,

-10-

rather than transacting business, concluding that such an action
also "arises from" the insured's having committed the underlying
tort in a way that subjected him or her to personal jurisdiction
in that forum.  On the other hand, at least as it relates to
tortious activity, the court in American Home Assur. Co. v. Sport
Maska, Inc., 808 F.Supp. 67, 74 (D. Mass. 1992) appears to have
rejected that analysis, stating that "[i]t stretches the text of
the long-arm statute to say that the contract claim arises out of
acts of the defendants causing tortious injury."

As a general matter, the courts of Ohio "are to construe the
long-arm statute broadly ...."  Natl. Court Reporters, Inc. v.
Rebecca N. Strandberg & Assoc., 2009 WL 1346641, *4 (Cuyahoga Co.
App. May 14, 2009).  However, the Court of Appeals has held that
because Ohio's requirement that the cause of action under
consideration "arise from" the defendant's activities in the
forum state is similar to the due process inquiry involving the
same issue, but the statute does not extend to the limits of the
due process clause, the Ohio "arising from" requirement must be
read more narrowly than the similar due process requirement.  See
Brunner v. Hampson, 441 F.3d 457 (6th Cir. 2006).  According to
Brunner, the Ohio statutory test is proximate cause.  It based
that conclusion not on any Ohio decisions, but upon dictum from
Coleman v. Chen, 712 F.Supp. 117 (S.D. Ohio 1988)(Rice, J.) and
language from Cruz v. Kentucky Action Park, Inc., 950 F.Supp. 210
(N.D. Ohio 1996), a case in which it is unclear whether the
court's decision was based on the fact that the defendant did not
transact business in Ohio or the plaintiff's claims did not arise
from defendant's Ohio-related activities, whether or not they
rose to the level of "transacting business."

The Court is not entirely persuaded by the reasoning in
Brunner that Ohio courts would adopt such a strict interpretation
of the "arising from" requirement of the long-arm statute.  It

-11-

may be that the intermediate approach suggested by <u>Bartile Roofs</u> is the most appropriate test.  Nonetheless, the Court will follow <u>Brunner</u> here.

Using the proximate cause test for the "arising under" prong of the long-arm statute, the Court concludes that there is a substantial enough connection between Mr. Woods' transaction of business within Ohio and his alleged commission of tortious acts outside Ohio but which have caused an impact within Ohio, on the one hand, and Capitol's alleged duty to defend or indemnify him for those acts, on the other hand, to permit the conclusion that the declaratory judgment action has arisen from Mr. Woods' jurisdictionally-significant contacts with Ohio.  The Court agrees with those decisions cited above that have reached the same conclusion, namely that there is a proximate, and not just a "but-for," causal connection between the actions that give rise to an underlying lawsuit and insurance coverage questions pertaining to that case.  The Court notes, in addition, that if an insured either transacts business in a state other than the one in which he or she resides, or tortiously injures someone in such a state, it is reasonably foreseeable that insurance coverage issues may arise from that conduct.  Such forseeability is the hallmark of proximate cause, and what distinguishes it from "but-for" causation.  <u>See Jeffers v. Olexo</u>, 43 Ohio St. 3d 140, 143 (1989)("The rule of proximate cause "'requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligent act.'" <u>Ross v. Nutt</u> (1964), 177 Ohio St. 113, 114, 29 O.O.2d 313, 314, 203 N.E.2d 118, 120, <u>quoting Miller v. Baltimore & Ohio Southwestern RR. Co.</u> (1908), 78 Ohio St. 309, 325, 85 N.E. 499, 504").  Because that is so,

-12-

the Court finds that the scope of its personal jurisdiction over
Mr. Woods in the declaratory judgment action is, for statutory
purposes, co-extensive with its jurisdiction over him in the
underlying DockDogs case.

It bears mentioning that there is another statutory basis
for requiring Mr. Woods to defend the declaratory judgment action
in this district. In American Home Assur. Co. v. Sport Maska,
Inc., supra, the court was faced with a similar issue and, as
noted above, did not accept unreservedly the proposition that, at
least on a theory of the defendants' having committed tortious
actions in the forum state, personal jurisdiction followed
automatically from an underlying case involving tortious injury.
However, the Court, construing Massachusetts' long-arm statute
(which is similar if not identical to Ohio's) found that
subsection 3(b) of that statute, which predicates jurisdiction on
supplying services or things within Massachusetts, was a firmer
foundation for asserting personal jurisdiction.

As the Sport Maska court observed, especially where there is
a dispute about both the duty to defend and the duty to
indemnify, an insured who is being defended by an insurer is
required by the policy to assist and cooperate with the defense.
That necessarily means that the insured will act within the forum
state by participating in the pretrial and trial processes, and,
by doing so, the insured supplies services within that state in a
way that satisfies the long-arm statute. Although this is not a
paradigm case for the application of this provision of the
statute, it is not an unreasonable interpretation of it, and
provides an alternate rationale for finding that at least one
prong of the long-arm statute is met in this situation.

If the Court were to adopt this latter interpretation of
Ohio's long-arm statute, there would be no need to delve into the
doctrine of "pendent personal jurisdiction." That is because the

-13-

duty to assist in the defense applies equally to all claims made against Mr. Woods in the DockDogs case, and not just those to which Mr. Woods is subject to personal jurisdiction directly under the long-arm statute.  However, if only the former analytical path is followed - resulting in a finding that the Court's personal jurisdiction in the declaratory judgment action is the mirror image of its jurisdiction in the DockDogs case - it would be necessary to explore this doctrine because Judge O'Malley found, in that case, that the Court could exercise personal jurisdiction over some of the claims only through the doctrine of pendent party personal jurisdiction.  Out of an abundance of caution, therefore, the Court will engage in a brief discussion of this jurisdictional doctrine.

As Judge O'Malley noted in her decision transferring the case to this Court, "[p]endent personal jurisdiction is a common law doctrine that recognizes the inherent fairness of exercising personal jurisdiction over claims asserted against a Defendant over whom the Court already has personal jurisdiction with respect to another claim or claims arising out of the same nucleus of operative facts."  J4 Promotions, Inc. v. Splash Dogs, LLC, 2009 WL 385611, *21 (N.D. Ohio February 13, 2009).  Under those circumstances, it makes little sense to dismiss or transfer such claims because doing so would not relieve the defendant from the obligation to appear and defend against other related claims, and would create inefficiencies by forcing claims arising out of a common nucleus of operative facts to be tried in different jurisdictions.  Judge O'Malley applied this doctrine to permit the Court to exercise personal jurisdiction over the defamation and statutory deceptive trade practices claims because they arose from the same set of facts underlying the other claims asserted by DockDogs.

-14-

The Court has little difficulty applying this concept here. The coverage issues relating to the claims over which the Court has pendent personal jurisdiction are clearly related to the coverage issues over which the Court has direct personal jurisdiction. They all arise under the same policies and involve construction of the same language and the same exclusions. Further, if the analysis is deepened to the level of the claims made by DockDogs, Judge O'Malley has already determined that all of these claims are sufficiently related to satisfy the test for pendent personal jurisdiction. Further, this doctrine is fairly uniformly accepted among those courts which have considered it. See, e.g., Hanly v. Powell Goldstein, L.L.P., 290 Fed.Appx. 435 1. (2d Cir. August 26, 2008), citing Hargrave v. Oki Nursery, Inc., 646 F.2d 716 (2d Cir.1980); see also United States v. Botefuhr, 309 F.3d 1262, 1273 (10th Cir. 2002) ("the majority of federal district courts and every circuit court of appeals to address the question have upheld the application of pendent personal jurisdiction, and we see no reason why, in certain situations, the assertion of pendent personal jurisdiction would be inappropriate"). Although it has developed as a matter of federal common law, there is no reason to believe that an Ohio court would not apply the same concept to a case in which the long-arm statute covered some, but not all, of a plaintiff's related claims, and, in any event, this may be a matter of federal procedure not dependent on the application of state law principles. See Hargrave, supra, at 720. Thus, the Court concludes that the exercise of personal jurisdiction over Mr. Woods with respect to all of Capitol's claims is consistent with the Ohio long-arm statute.

### 2. Due Process

The second required step in the personal jurisdiction analysis is to determine if the exercise of such jurisdiction in

-15-

a way which comports with the applicable state long-arm statute
is consistent with the requirements of the Due Process Clause of
the Fourteenth Amendment to the United States Constitution.
Although the Court will highlight the relevant case law and
explain the inquiries which must be made, its analysis will be
somewhat shortened by the fact that this same analysis has
already been made with respect to Mr. Woods' underlying conduct
and that Judge O'Malley has concluded that it does not offend the
due process clause to force him to defend himself in Ohio with
respect to that conduct.  If that is so, and because this Court's
exercise of jurisdiction over the declaratory judgment claims is,
under the long-arm statute, co-extensive with its exercise of
jurisdiction over the underlying statutory and common-law claims
made by DockDogs, it would be surprising indeed if the due
process analysis of the former claims yielded a different result.

    The due process clause "does not contemplate that a state
may make binding a judgment in personam against an individual or
corporate defendant with which the state has no contacts, ties,
or relations." World-Wide Volkswagen Corp.v. Woodson, 444 U.S.
286, 294 (1980), citing, International Shoe Co. v. Washington,
326 U.S. 310, 319 (1945).  The minimum contacts necessary to
establish jurisdiction in the forum state must be "such that the
maintenance of the suit does not offend 'traditional notions of
fair play and substantial justice.'"  International Shoe, 326
U.S. at 316.  The minimum contacts test may be satisfied by doing
acts in the state that bring about a substantial connection with
a state, or cause a known or expected consequence in the state.
McGee v International Life Ins. Co., 355 U.S. 220, 223 (1957).
"The two related functions of the minimum contacts requirement
are that it protects a defendant from the burden of litigating in
an inconvenient forum and prevents the states from reaching out,
through their courts, 'beyond the limits imposed on them by their

status as coequal sovereigns in a federal system.'" <u>American
Greetings Corp. v. Cohn</u>, 839 F.2d 1164, 1169 (6th Cir. 1988).

The Sixth Circuit has developed a three-part test for
determining whether the particular circumstances in any case
provide sufficient contact between a non-resident defendant
and the forum state to support the exercise of personal
jurisdiction:

> First, the defendant must purposefully avail
> himself of the privilege of acting in the forum
> state or causing a consequence in the forum
> state.  Second, the cause of action must arise
> from the defendant's activities there.  Finally,
> the acts of the defendant or consequences
> caused by the defendant must have a substantial
> enough connection with the forum state to make
> the exercise of jurisdiction over the defendant
> reasonable.

If the above criteria are satisfied, jurisdiction is
appropriate if the facts of the particular case are such that
"maintenance of the suit does not offend 'traditional notions
of fair play and substantial justice.'"  <u>International Shoe</u>,
326 U.S. at 316.  <u>Southern Machine Co. v. Mohasco Industries,
Inc.</u>, 401 F.2d 374 (6th Cir. 1968).  While this test
established a useful analytical framework, each case must be
determined on its particular facts.  <u>Velantra v. Regle
National DeUsines Renault</u>, 336 F.2d 292, 295 (6th Cir. 1964).

The first step of the three part analysis enunciated in
Southern Machine requires an inquiry into whether a defendant
has acted or caused consequences within the forum state.
This step requires that the defendant "purposefully avail
itself of the privilege of conducting activities within the
forum state, thus invoking the benefits and protections of
its laws." <u>Hanson v. Denkla</u>, 357 U.S. 235, 253 (1958).  In
most cases, it is a common sense inquiry as to "whether the
defendant has transacted business within the forum state in

the usual, commercial sense of 'doing business.'" <u>American</u>
<u>Greetings Corp. v. Cohn</u>, 839 F.2d 1164, 1169 (6th Cir. 1988).
This provision is designed to ensure that a plaintiff's
unilateral activity will not "drag an unsuspecting and
unwilling defendant into a foreign forum." <u>In-Flight Device</u>,
466 F.2d at 226. It is a "baseline" requirement that the
defendant has become involved with the forum state through
actions freely and intentionally done, which have effects in
the forum state. <u>Id</u>. at 228.

The second part of the <u>Southern Machine</u> test requires an
analysis of whether the plaintiff's cause of action arises
out of or is related to the defendant's contacts with the
forum state. The third part of the Southern Machine test
requires inquiry into whether a defendant's conduct
establishes a "...substantial enough connection with the
forum state to make the exercise of jurisdiction over the
defendant reasonable." <u>Southern Machine</u>, 401 F.2d at 381.
This analysis requires a determination whether the Court's
exercise of jurisdiction would offend "traditional notions of
fair play and substantial justice," <u>International Shoe</u>, 326
U.S. at 316, and whether the defendant's conduct relating to
the forum was such that he should reasonably anticipate being
haled into court here. <u>World-Wide Volkswagen</u>, 444 U.S. at 297.
In reaching the decision on fair play and substantial
justice, the court must consider such factors as the burden
on the defendant, the interest of the forum state, the
plaintiff's interest in obtaining relief, and the interest of
other states in securing the most efficient resolutions of
controversies. <u>American Greeting Corp.</u>, 839 F.2d at 1169-70,
citing <u>Asahi Metal Industry Co. v. Superior Court of</u>
<u>California</u>, 480 U.S. 102 (1987). When the first two elements
of the <u>Southern Machine</u> test have been met, an inference

-18-

arises that the third is also present.  <u>First National Bank
of Louisville v. J. W. Brewer Tire Co.</u>, 680 F.2d 1123, 1126
(6th Cir. 1982).

With respect to the issue of purposeful availment, as
discussed above, Mr. Woods conducted business in Ohio when he
participated in the promotion and hosting of Splash Dogs' canine
jumping event in Columbus, Ohio in March, 2007.  This event, for
purposes of commercial gain, would have been directed at Ohio
residents to promote their participation and to solicit their
attendance as spectators.  Consequently, this is the very type of
business activity generally found to satisfy the purposeful
availment prong of the <u>Southern Machine</u> test.

Further, with respect to the issue of whether Capitol's
claims can be said to "arise from" this contact with Ohio, as
discussed above, the Columbus event was held on March 9, 10, and
11, 2007.  There is no dispute that the first Capitol policy was
in effect from March 5, 2007 through March 5, 2008.  DockDogs'
suit, in which Mr. Woods' has enlisted Capitol's defense, alleges
harm to DockDogs as a result of Splash Dogs' promotion and
hosting of the Columbus event and other similar events.  The
focus of Capitol's declaratory judgment action is that it has no
coverage obligation with respect to DockDogs' claims as they
relate to this event, held during the coverage period, or
otherwise.  Consequently, the coverage issue in Capitol's
declaratory judgment action has a substantial connection to Mr.
Woods' Ohio activities.

Finally, with respect to the issue of whether the exercise
of personal jurisdiction over Mr. Woods is reasonable in light of
his connection with Ohio, the Court concludes that it is.
Certainly, the fact that Mr. Woods is already defending one
action in this Court relating, at least in part, to Splash Dogs'
activities in Ohio greatly minimizes his burden in defending this

-19-

action. Further, DockDogs is an Ohio corporation and maintains its principal place of business in Medina, Ohio. As a result, Ohio has an interest in protecting DockDogs' business were DockDogs to secure a favorable judgment in the underlying action only to have its recovery limited by Splash Dogs' lack of insurance coverage. At the same time, Capitol has an interest in obtaining a decision as to its coverage obligations with respect to DockDogs' claims already pending in this Court. Finally, although Mr. Woods has suggested that California might also have some interest in this dispute, he has failed to persuade the Court that any such interest is sufficient to demonstrate that personal jurisdiction in Ohio is unreasonable.

Additionally, the Court notes that other courts faced with similar motions to dismiss for lack of personal jurisdiction have concluded that the exercise of personal jurisdiction over a defendant in a declaratory judgment action arising out of an underlying suit satisfies due process requirements. All of the cases the Court cited above in which it was held that personal jurisdiction existed to hear a declaratory judgment action like the one brought by Capitol concluded not only that jurisdiction was proper under the applicable state long-arm statute, but was permissible under the due process clause as well. This Court agrees; if anything, it is more appropriate to exercise jurisdiction over the declaratory judgment claims than the underlying statutory or tort claims asserted by DockDogs, because when Mr. Woods allegedly committed those wrongs, he could not be certain that he would be called into court in Ohio to answer for them, whereas when he demanded a defense and indemnification from Capitol, he was already here and was asking Capitol to act (with his assistance) in Ohio to defend him against DockDogs' claims. He can hardly claim surprise or lack of forseeability that

Capitol would want to litigate its coverage claims in the same forum.

Finally, it bears mentioning that Mr. Woods has argued that this suit and the DockDogs suit cannot be sufficiently related for the latter to have an impact on the former, for jurisdictional purposes, because this Court did not permit Capitol to intervene in that case, nor did it order the cases consolidated. The short answer to this contention is that the two inquiries are very different. Even if Capitol's claims and DockDogs' claims share common elements – and, from a factual standpoint, there is certainly some overlap – intervention and consolidation depend upon a finding that the claims should proceed jointly and be tried together, primarily in order to avoid undue prejudice to the parties or to foster judicial efficiency. It is true, as the Court held, that the claims asserted by Capitol and DockDogs are unrelated legally; there is no overlap in the legal analysis between whether Mr. Woods' conduct violated the copyright law or state statutory or tort laws, and whether his insurance policy covers that type of conduct. However, there is also no question that both claims arose from the same conduct; had Mr. Woods not done the things he allegedly did, neither DockDogs nor Capitol would have any claims to assert. The Court is also satisfied that the claims are substantially connected in that the coverage claims arose "in the wake of" DockDogs' statutory and tort claims, see United Services Automobile Ass'n v. Cregor, supra. Thus, although, due to differences in the legal issues and in the progress of each case, and given the lack of any need for Capitol to become a party to the DockDogs case, denial of intervention and consolidation was proper, it does not follow that the Court lacks personal jurisdiction over the coverage claims. Consequently, Mr. Woods'

motion to dismiss for lack of personal jurisdiction will be denied.

     B. <u>Motion to Dismiss for Improper Venue Pursuant to</u>
<u>Fed.R.Civ.P. 12 (b)(3)</u>

     Mr. Woods also has moved to dismiss this case for improper venue pursuant to Fed.R.Civ.P. 12(b)(3).  In support of his motion, Mr. Woods claims that none of the defendants are residents of Ohio and that a substantial portion of the events giving rise to Capitol's claim did not occur in the Southern District of Ohio.  Because this is a diversity case, the applicable venue statute is 28 U.S.C. 1391(a).

     Section 1391(a) provides:

     A civil action wherein jurisdiction is founded only on
     diversity of citizenship may, except as otherwise
     provided by law, be brought only in (1) a judicial
     district where any defendant resides, if all defendants
     reside in the same State, (2) a judicial district in
     which a substantial part of the events or omissions
     giving rise to the claim occurred, or a substantial
     part of property that is the subject of the action is
     situated, or (3) a judicial district in which any
     defendant is subject to personal jurisdiction at the
     time the action is commenced, if there is no district
     in which the action may otherwise be brought.

     Under §1391(a)(2), proper venue requires that "a substantial part of the events or omissions giving rise" to Capitol's claims have occurred in this district.  Courts do not interpret this section as requiring that a plaintiff file a complaint "in the district where the most substantial events giving rise to the claim occurred." <u>Cunningham v. MRC Enterprises, Inc.</u>, 2011 WL 1869911, *2 (E.D. Mich. Apr. 20, 2011).  Instead, venue is proper in "any forum with a substantial connection to the plaintiff's claim." <u>First of Mich. Corp. v. Bramlet</u>, 141 F.3d 260, 263 (6th Cir. 1998).  As a result, venue may be proper in two or more districts, even though most of the events occurred in only one of the districts. <u>Cunningham</u>, <u>citing Setco Enters. v. Robbins</u>, 19 F.3d 1278, 1281 (8th Cir. 1994).  "Substantiality is intended to

-22-

preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." Pioneer Surgical Technology, Inc v. Vikingcraft Spine, Inc., 2011 WL 64239 (W.D. Mich. Jan. 7, 2011), *2 quoting, Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994). Consequently, courts focus their inquiry on the defendant's relevant activities. Cunningham, at *2.

As discussed at length above, the Southern District of Ohio has a substantial connection to Capitol's claims for declaratory relief. Judge O'Malley determined that the "anchor claims" of the DockDogs suit arose out of the March, 2007 competition, which was held in Columbus. In the same manner, the coverage issues concerning those "anchor claims" have a substantial connection to that event. Further, the coverage dispute itself is directly tied to the litigation occurring in this district, where Capitol is being asked to, and is, defending Mr. Woods. Under these circumstances, there are enough ties to this district to satisfy the "substantiality" test of §1391(a)(2).

C. Motion to Transfer Venue Pursuant to 28 U.S.C. §1404

Mr. Woods requests that this Court transfer venue to the United States District Court for the Central District of California pursuant to 28 U.S.C §1404. Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

A decision to transfer venue is within the Court's discretion. Twenty First Century Communications, Inc. v. TechRadium, Inc., 2010 WL 3001721, *3 (S.D. Ohio July 30, 2010), citing Gulf Oil Corp v. Gilbert, 330 U.S. 501, 508 (1947). The factors to be considered by the Court in addressing a motion to transfer pursuant to §1404 have been explained as follows:

> The Sixth Circuit has stated that in deciding whether to transfer a case, "a district court should

consider the private interests of the parties,
including their convenience and the convenience of
potential witnesses, as well as other public-interest
concerns, such as systemic integrity and fairness,
which come under the rubric of 'interests of justice.'"
Moses v. Bus. Card Express, Inc., 929 F.2d 1131, 1137
(6th Cir. 1991). The movant bears the burden to
demonstrate that the balance of factors strongly favors
transfer.  Hanning v. New England Mut. Life Ins. Co.,
710 F.Supp. 213, 214 (S.D. Ohio 1989). Private
interest factors of the parties include " 'the relative ease of
access to sources of proof; availability of compulsory
process for attendance of unwilling, and the cost of
obtaining attendance of willing, witnesses; ... and all
other practical problems that make trial of a case
easy, expeditious and inexpensive.' " Hanning, 710
F.Supp. at 214 (quoting Gilbert, 330 U.S. at 508).


　　　　Transfer is inappropriate if it merely shifts the
burden of inconvenience. See Reed Elsevier, Inc. v.
Innovator Corp., 105 F.Supp.2d 816, 821-22 (S.D. Ohio
2000). There is thus a strong presumption in favor of a
plaintiff's choice of forum that "may be overcome only
when the private and public interest factors clearly
point towards trial in the alternative forum." Piper
Aircraft Co. v. Reyno, 454 U.S. 235, 255, 102 S.Ct.
252, 70 L.Ed.2d 419 (1981).  See Trustar Funding v.
Mruczynski, No. 1:09-cv-01747-CAB, 2010 WL 1539759, at
*10 (N.D. Ohio Mar. 30, 2010) ("'Plaintiff's choice of
forum should be given 'great' or 'substantial' weight
when considering whether to transfer a case under §
1404(a).' " (quoting U.S. v. Cinemark USA, Inc., 66
F.Supp.2d, 881, 888 (N.D. Ohio 1987))).  A plaintiff's
choice of forum is given little weight "'where none of
the conduct complained of occurred in the forum
selected by the plaintiff.'" Keybanc Capital Markets v.
Alpine Biomed Corp., No. 1:07 CV 1227, 2008 WL 828080,
at *7 (N.D.Ohio Mar.26, 2008) (quoting Edmison v.
Vision Inv. & Dev., LLC, No. 1:06 CV 1108, 2006 WL
3825149, at *5 (N.D. Ohio Dec. 26, 2006)).

　　　Id.

Here, Mr. Woods has not made any significant argument in
favor of transferring venue in this case to the Central District
of California.  Instead, he appears to have made the identical
arguments which were advanced in the DockDogs' case and rejected

-24-

by Judge O'Malley.  In that case, there was an argument to be
made that some of the witnesses to the underlying statutory and
tort claims resided in California and that some of the relevant
conduct occurred there.  These arguments are much less compelling
in this declaratory judgment case.  Mr. Woods himself resides in
Indiana, so to the extent that he might be a witness in the
declaratory judgment action, California would be a much less
convenient forum for him than would Ohio.  But it is not likely
that many witnesses will be called here; most actions of this
sort are determined on the basis of motions which call upon the
Court to make a legal determination, not a factual one, about the
scope of the policy and the interpretation of its language and
its exclusions.  See, e.g., Evangelical Lutheran Church in
America v. Atlantic Mut. Ins. Co., 973 F.Supp. 820 (N.D. Ill.
1997) (finding that the factors dealing with convenience of the
parties and the availability of evidence are "essentially
irrelevant" in this type of case because of the unlikely prospect
of a trial).  In short, it is simply impossible to conclude that
it would be any more convenient to either Capitol or Mr. Woods,
or even to Splash Dogs, to litigate the coverage issues in
California rather than Ohio.

   III.  <u>Mr. Woods' Motion to take Judicial Notice (Doc. #26)</u>

    Mr. Woods also has filed a motion requesting that the Court
take judicial notice of its previous orders issued in the
DockDogs' case as support for his position that this Court's
exercise of personal jurisdiction over him is not proper.  For
all of the reasons set forth above, this motion will be denied as
moot.

          IV.  <u>Disposition</u>

    For the forgoing reasons, Defendant Randy Woods' motion to
dismiss for lack of personal jurisdiction and improper venue, or
in the alternative, to transfer of venue (Doc. #24) is DENIED.

-25-

Further, the motion to take judicial notice (Doc. #26) is DENIED as moot.


                                    s/Algenon L. Marbley
                                    Algenon L. Marbley
                                    United States District Judge